IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>Plaintiff, )<br>) CIVIL NO. 2005-0107<br>v. )<br>)<br>1984 WHITE SONIC SPEEDBOAT )<br>S/N JCL24066M84C, )<br>)<br>Defendant. )<br>_____ ) | |

## MEMORANDUM OPINION

FINCH, J.

      THIS MATTER comes before the Court on a Motion for Summary Judgment. The government requests that Defendant *in rem*, a 1984 White Sonic Speedboat, Serial No. JCL24066M84C be forfeited to the United States. After careful consideration, the Court issues the following ruling.

**I.  FACTUAL FINDINGS**

      Jacobo Garcia ("Garcia") is the owner of the Defendant property. See Answer To Forfeiture Complaint ¶ 12 (Docket No.5). On March 2, 2005, Garcia and three other co-conspirators were indicted in the District Court of Puerto Rico on two Counts of conspiracy to import into the United States Territory from a place outside the United States, that is St. Maarten in the Netherland Antilles, five kilograms or more of cocaine, and conspiracy to possess with intent to distribute five kilograms or more of a substance known or identified as cocaine. On September 6, 2005 Garcia's guilty plea to both counts of the Indictment, returned by a grand jury

1

in the District of Puerto Rico, was accepted by the District Court upon the recommendation of the Magistrate Judge.

Prior to the arrest and conviction of Garcia, sources[1] informed law enforcement officers with the High Intensity Drug Trafficking Area ("HIDTA") Task Force that the Defendant property was involved in smuggling activities in St. Maarten and Puerto Rico.  See Howell Decl. at ¶¶ 4, 5 (Docket No. 38).  The Defendant property was observed in Vieques, Puerto Rico around November 2004, and in St. Maarten in December 2004 around the time that law enforcement received information that the Defendant property would be in these locations.[2]  Id. Garcia later admitted to undercover agents that he owned boats that were used by himself and others to facilitate the importation of cocaine from outside the United States into the United States territories.[3]  See Howell Decl. at ¶ 9.

An investigation by HIDTA into the financial affairs of Garcia prior to his arrest revealed no source of legitimate employment or income.  See Howell Decl. at ¶ 7.  Throughout the year-

---

[1] In November and December 2004, the HIDTA Task Force office received information from a concerned citizen, independent of information also received from law enforcement personnel of the U.S. Immigration and Customs Enforcement office, that Garcia owned a Sonic Speed Boat that was being used for illegal smuggling activities in the islands, and that the boat had been spotted in Vieques, Puerto Rico and believed to be involved in the transportation of drugs.  See Howell Decl. at at ¶¶ 4, 5.

[2] In December 2004, a HIDTA Task Force Officer Howell received information that a known associate of Garcia was in St. Maarten to obtain a drug load.  Officer Howell made contact with the Dutch authorities, in St. Maarten and requested surveillance on any of the boats known to be associated with Garcia and his associates; the 1984 Sonic Speed Boat, Defendant property in this matter, and a 1986 Boston Whaler. The Dutch authorities reported that they had discovered the Sonic Speed Boat in their jurisdiction on December 9, 2004, but lost contact with it sometime during December 10, 2004.  On the same day that the Dutch authorities reported that they had lost contact with the Sonic Speed Boat, a Virgin Islands Police Officer with the Marine Unit reported seeing the Sonic being towed by trailer in St. Croix. An inspection of the vessel by officers of the Marine Unit revealed that the vessel was the same one reported to have been seen by the Dutch authorities in St. Maarten, by confirming that the Virgin Islands registration identification number matched the vessel that was seen in St. Maarten.  See Howell Decl. at at ¶¶ 5, 6.

[3] Garcia told undercover agents that he had a cocaine source in St. Maarten that provided him with cocaine, which he transported back to St. Croix by means of his boats.  See Howell Decl. at ¶ 9

long investigation, Garcia did not go to any job to work, nor did he on a day-to-day basis appear to perform any work for himself. Id. Despite this apparent lack of employment, HIDTA received information that Garcia purchased the Sonic Speedboat utilizing nearly $18,000.00 in cash at a time when the vessel needed major repairs. Id. Within a short period of time after the purchase, Garcia replaced the original engines with two new engines, worth approximately $30,000.00.[4] Id.

On July 19, 2005, the United States filed this civil *in rem* forfeiture action against the Defendant property, alleging that it is subject to forfeiture pursuant to 21 U.S.C. § 881. A Warrant of Arrest for the Defendant property was signed on July 25, 2005, and executed on September 15, 2005. Garcia was personally served with a copy of the Verified Complaint of Forfeiture and the Warrant of Arrest on September 16, 2005. Garcia, through his attorney of record, filed an answer to the forfeiture complaint on November 21, 2005. On October 2nd, 9th, and 16th, 2007, notice of this action was published in The Virgin Islands Daily News, a newspaper of general circulation in the District of the Virgin Islands, Division of St. Croix. Claimant Bryant Marine Service was the only entity to file a claim for a mechanic's lien on the Defendant property in the amount of one thousand six hundred ninety two dollars and forty-three cents ($1,692.43) for repair services made on the Defendant property.

The government filed the instant Motion for Summary Judgment with supporting affidavits on October 1, 2008. The government is seeking summary judgment against the claimed interest of Garcia, alleging that there is no genuine issue of material fact requiring a trial

---

[4] Garcia replaced the Sonic Speedboat's original engines with twin 200 horse-power Mercury outboard engines which remain on the vessel today. According to HIDTA Officer Howell and Virgin Islands Police Department Marine Officers, each of these engines is worth approximately $15,000.00. See Howell Decl. at ¶ 7.

regarding the forfeiture of the Defendant property as against Garcia. Claimant Garcia has not responded to the government's Motions.

## II. STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48.

The moving party has the burden of proving that there is no material issue of fact in dispute and, once the moving party has carried its burden, the nonmoving party must produce sufficient evidence that will reasonably support a jury verdict in its favor and not just "some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). In analyzing this motion for summary judgment, the Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e)(2). Rather, the non-moving party's response must, by affidavits or otherwise, set out specific facts showing a genuine issue for trial. Id. "If the opposing party does not respond, summary judgment should, if appropriate, be entered against that party." Id.

4

A summary judgment motion in a forfeiture action is also evaluated in light of the procedural requirements of forfeiture law.  United States v. Premises Known as 717 S. Woodward Street, 2 F.3d 529, 533 (3d Cir. 1993); see United States v. One Parcel of Real Property Located at No. 14-1 Estate St. John, 899 F. Supp. 1415 (D.V.I. 1995).  On April 25, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202.  This forfeiture action was commenced after August 23, 2000, the date on which CAFRA became effective.  Therefore, the CAFRA procedures set forth in 18 U.S.C. § 983 apply to this case.

Under CAFRA, the burden of proof is on the government to establish, by a preponderance of the evidence, that the Defendant *in rem* is subject to forfeiture.  18 U.S.C. § 983(c)(1); see also United States v. Ten Thousand Seven Hundred Dollars & No Cents in United States Currency, 258 F.3d 215, 222 (3d Cir. 2001) (stating that government bears initial burden of establishing that it had probable cause to believe that property was subject to forfeiture at time it filed forfeiture complaints in district court).  Once the government makes this showing, the burden then shifts to the claimant to prove by a preponderance of the evidence that the Defendant *in rem* is not subject to forfeiture. 18 U.S.C. § 983(d)(1); United States v. Dollar Bank Money Market Account No. 1591758456, 980 F.2d 233, 237 (3d Cir. 1992); United States v. 2001 Honda Accord EX, 245 F. Supp. 2d 602, 607 (M.D. Pa. 2003).

### III. DISCUSSION

The issues in this case are (1) whether there are any genuine issues of material fact and, if not, (2) whether the Defendant *in rem*, a 1984 White Sonic Speedboat, Serial No. JCL24066M84C, should be forfeited in favor of the United States.

A.   **Genuine Issue of Material Fact**

It is undisputed that Garcia pled guilty to a conspiracy to import into the United States territory, from a place outside the United States, five kilograms or more of cocaine.  See Ex. B to Howell Declaration.  It is also undisputed that Garcia pled guilty to a conspiracy to possess with intent to distribute five kilograms or more of cocaine. Id.  Central to the disposition of this case are the facts that (1) Garcia boasted to undercover agents about his level of involvement in the cocaine business, and told these agents that a source in St. Maarten provided him with cocaine which he then transported to St. Croix by means of his boats, (2) he is known to own two boats, one of which is the Defendant property, (3) during the investigation into Garcia's illegal activities, law enforcement agents did not observe that he was involved in any legitimate business and (4) he purchased the Defendant property and made extensive repairs on it, equipping the same with two 200 horsepower outboard motors each valued at $15,000.00, at a time when he was not apparently conducting legitimate business for himself or working for anyone else.

The Statement of Material Facts and any factual assertions contained in the affidavits filed by the government are accepted by the Court as true because claimant Garcia has failed to submit his own affidavits or other documentary evidence contradicting the assertions therein. Fed. R. Civ. P. 56(e).  Based on Claimant Garcia's guilty plea and the affidavits submitted by the government, the Court finds that there are no genuine issues of material fact in this case.

B.   **Forfeiture of the Defendant Property**

Title 21 U.S.C. § 881(a)(4) provides for the forfeiture of "[a]ll conveyances, including vessels, which are used to transport, or in any manner facilitate the transportation, sale, receipt,

6

possession or concealment of a [controlled substance as described in section 881(a)(1)]." Title 21 U.S.C. § 881(a)(6) provides for the forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title." Id.

If the Court determines that the information relied upon by the government is sufficient to establish probable cause that the property may be forfeited, the burden shifts to the claimant to show by a preponderance of the evidence that he or she has a defense to the forfeiture. Id; see United States v. One 1973 Rolls Royce, 43 F.3d 794, 804 (3d Cir. 1994). If the government establishes that it had probable cause to seize the subject property, the claimant bears the burden of proving that the requested forfeiture does not fall within the four corners of the statute and if no such rebuttal is made, a showing of probable cause alone will support a judgment of forfeiture. See Concepcion v. United States, 298 F.Supp. 2d 351, 356 (E.D.N.Y. 2004).

The Court, in issuing the Warrant of Arrest for Defendant 1984 White Sonic Speed Boat, already found probable cause to believe that Defendant property was involved in the illegal drug trafficking business. See Warrant and Summons for Arrest of Articles in Rem (Docket No. 3). In support thereof, the Court notes the facts that (1) Garcia admitted to undercover agents that he owned boats that were used to facilitate the importation of cocaine from outside the United States into the United States territories, (2) he told undercover agents that he had a cocaine source in St. Maarten that provided him with cocaine, which he transported back to St. Croix by means of his boats (3) authorities in St. Maarten reported that they had discovered his Sonic Speed Boat in their jurisdiction on December 9, 2004 and (4) a Virgin Islands Police Officer

with the Marine Unit reported seeing the Sonic Speed Boat being towed by a trailer in St. Croix. Considering these facts, the Court finds that the government has established, by a preponderance of the evidence, that the Defendant *in rem* was involved in the trafficking of illegal drugs or was used to facilitate such illegal drug activity in violation of 21 U.S.C. § 881(a)(4).

Additionally, the Court finds that the government has demonstrated, by a preponderance of the evidence, that the Defendant *in rem*, as well as all improvements made to the subject property, were purchased with proceeds traceable to illegal drug transactions in violation of 21 U.S.C. § 881(a)(6). This conclusion is supported by the fact that, throughout HIDTA's year-long investigation, Garcia did not go to any job to work. Moreover, Garcia has failed to demonstrate a legitimate source of income for the purchase of the Defendant property, other than for the illegal drug trafficking in which he admitted he was involved. See Concepcion, 286 F. Supp. 2d at 356.

Because the claimant does not set out specific facts showing a genuine issue for trial and has failed to show by a preponderance of the evidence that he has a defense to the forfeiture of the Defendant property, summary judgment is entered in favor of the United States.

## IV. CONCLUSION

The Court finds that there are no genuine issues of material fact in this case and the United States is entitled to judgment as a matter of law. In addition, the Court finds that the Defendant *in rem*, a 1984 White Sonic Speedboat, Serial No. JCL24066M84C, is subject to forfeiture in favor of the United States, and there is no individual with an interest greater than the United States who can claim ownership to the Defendant. For the reasons stated herein, summary judgment is **GRANTED** and the Defendant *in rem* is forfeited to the United States.

ENTERED this 5th day of November, 2008.

                                           /s/
                                 **HONORABLE RAYMOND L. FINCH**
                                 **SENIOR U.S. DISTRICT JUDGE**